**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| JOEY NEWTON<br>4635 Loxley Dr.<br>Dayton, OH 45439 | )<br>)<br>) | CASE NO. 3:21-cv-00173 |
| Plaintiff, | )<br>) | JUDGE: |
| v. | )<br>)<br>) | |
| AIRGAS USA LLC<br>2400 Sandridge Drive<br>Moraine, OH 45439 | )<br>)<br>)<br>) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| **Serve Also:**<br>AIRGAS USA LLC<br>c/o CT Corp. System (Stat. Agent)<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | )<br>)<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED HEREIN** |
| -and- | )<br>) | |
| LENNY DANIELS<br>c/o Airgas USA LLC<br>2400 Sandridge Drive<br>Moraine, OH 45439 | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

Plaintiff JOEY NEWTON by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Newton is a resident of the city of Dayton, Montgomery County, state of Ohio.

2. Defendant AIRGAS USA, LLC ("Airgas") is a foreign-incorporated, for-profit company that conducts business throughout the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 2400 Sandridge Drive, Moraine, OH 45439.

3. Airgas is, and was at all times hereinafter mentioned, Newton's employer within the meaning of the Americans with Disability Act ("ADA") 42 U.S.C. § 12101 and R.C. § 4112 *et seq*.

4. Upon information and belief, Defendant LENNY DANIELS is a resident of Ohio.

5. Daniels is, and was at all times hereinafter mentioned, Newton's employer within the meaning of the ADA, and R.C. § 4112 *et seq*.

## JURISDICTION & VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Newton is alleging federal law claims under the ADA.

7. This Court has supplemental jurisdiction over Newton's state law claims pursuant to 28 U.S.C. § 1367, as Newton's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Newton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2020-01456) against Defendants ("EEOC Charge").

10. On or about April 5, 2021, the EEOC issued and mailed a Dismissal and Notice of Rights letter to Newton regarding the EEOC Charge.

11. Newton received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

12. Newton has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

13. Newton has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Newton is a former employee of Airgas.

15. At all times noted herein, Newton was qualified for his position with Airgas.

16. At all times noted herein, Newton could fully perform the essential functions of his job, with or without a reasonable accommodation.

17. Newton has short-term memory issues that resulted from a bad car crash in July 2016, placing him in a protected class for his disability.

18. The crash was life-threatening, and Newton still suffers from short-term memory loss as a result.

19. Newton worked for Airgas as a Truck Driver from May 2018 until Airgas constructively terminated Newton's employment on or about May 1, 2020.

20. Newton was very open about the accident at Airgas, but struggled to remember small, fine details in the short-term.

21. Newton informed Airgas of his disabling conditions, and thus Airgas was aware of his disability protected class.

22. At all times, Newton was qualified for his position at Airgas with or without reasonable accommodation.

23. After a few months with Airgas, Newton realized that the individuals he worked with preferred not to follow the rules and perpetuate harassment instead.

24. In or around May 2018, a particularly difficult forklift operator named John Stein began tormenting Newton.

25. Stein would have outbursts of violent behavior, shouting "you don't want to piss me off, I can fuck up your whole day!"

26. On one occasion, Stein attempted to initiate a physical altercation with another employee, Eric McFadden by shouting, "get up out of your chair, and I'll show you boy!" This incident was witnessed by many people.

27. Additionally, Stein placed grease on the door handles of Newton's work truck, removed the wheels from his cylinder cart, and changed his hazmat placards, evidently in hopes Newton would get in trouble with the Department of Transportation.

28. Stein was never disciplined for this behavior, even after it would happen in front of management.

29. Then, in or around August 2019, Lenny Daniels was hired as the Field, Plant, and Driver Manager.

30. Newton was excited for Daniels' arrival, and hoped he would bring a new, focused energy to an otherwise chaotic work environment.

31. Unfortunately for Newton, Daniels fed into the toxic work culture, eventually becoming Newton's harasser.

32. In or around September 2019, Newton returned from his route and was approached by Daniels who asked why he left his lift gate down.

33. Newton thought he put the gat back up, but when he and Daniels went outside to check, sure enough Newton had left the gate down.

34. When Newton went to correct the mistake, Daniels said, "you're a stupid fucker, I can see that now. I'm going to have to baby sit you every day."

35. Newton told Daniels that he was trying his best, but that his short-term memory issues sometimes caused him to forget things.

36. Daniels disparately did not make similar comments to non-disabled employees.

37. By March 2020, Daniels was nit-picking everything about Newton's work. Any time Newton made the tiniest mistake, Daniels would call him a "stupid fucker," "bitch," and "pussy."

38. On one instance, Newton forgot his work vest in his truck and when he turned back to go get it, Daniels became irate, pulling Newton into his office to scream "I'm so tried of your shit. You do know that I have my concealed carry, right? I'm packing here all the time at work."

39. Newton interpreted that message to be a threat of physical violence against him.

40. Daniels not only threated Newton with physical violence, but also sexually harassed him.

41. In early January 2020, Newton saw Daniels in his office who motioned with one finger through the office window for Newton to come in.

42. When Newton entered Daniels' office, Daniels only laughed saying, "I just wanted to see if I could make you come," referring derogatorily to male ejaculation.

43. Disgusted, Newton left without responding but not before Daniels slapped him on his butt.

44. Newton did not appreciate, nor consent to, this physical assault by Daniels.

45. Later that month, Newton ran an unfamiliar route to Cincinnati and had a few issues along the way including a lock with no key that prevented him from making one of his stops.

46. Per protocol, Newton called Daniels for direction, and when Daniels could not reach the necessary people, Newton moved on to the next stop. These calls (when they connected) always resulted in Daniels insulting and denigrating Newton.

47. The next day, Daniels brought Newton into his office and yelled at him saying, "I should bend you over this table and fuck you in the ass, you're so stupid."

48. This was additional sexual harassment by Daniels against Newton.

49. Further, Daniels would frequently show Newton photos of his daughter.

50. These photos depicted Daniels' daughter posed in provocative ways, scantily clad, often with lots of visible cleavage. Daniels' often mentioned that his daughter was a gymnast.

51. These photos made Newton very uncomfortable, especially since they were of Daniels' own daughter.

52. Unable to tolerate the constant harassment, Newton was forced to email Human Resources on May 1, 2020, to notify Airgas of his resignation effective immediately.

53. In the email to HR, Newton also reiterated the harassment and discrimination he had received during his employment.

54. HR later informed Newton that his accusations had been denied, per HR's investigation.

55. Upon information and belief, HR did not conduct any investigation.

56. No reasonable person would have been able to keep working for Airgas under those circumstances, suffering constant harassment.

57. After Newton was forced to resign, he began applying for other jobs.

58. One of the jobs Newton applied for (USExpress) attempted to contact Airgas to confirm Newton's dates of employment.

59. Instead of giving the dates, an agent of Airgas intentionally denied Newton ever worked for Airgas in an attempt to sabotage Newton's efforts to gain employment, upon information and belief.

60. This behavior contributed to Newtons damages, and/or preventing him from mitigating the damages caused by his forced resignation.

61. This false and discriminatory job reference by Airgas was an adverse action against Newton.

62. As a result of the above, Newton has suffered damages, including economic damages, as well as severe emotional distress, anxiety, and depression.

## COUNT I: HOSTILE WORK ENVIRONMENT ON THE BASIS OF DISABILITY DISCRIMINATION
### (Defendant Airgas Only)

63. Newton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

64. During his employment with Airgas, Newton was subjected to offensive and harassing conduct by Airgas and Daniels based on his disability.

65. Newton was offended by Daniels' derogatory comments aimed at him whenever he forgot something or did not perform a task in the exact way Daniels' thought he should.

66. Newton was offended by Daniels' threat of violence against Newton whenever he forgot something or did not perform a task in the exact way Daniels' thought he should.

67. Defendants knew or should have known of the harassing conduct against Newton by Daniels.

68. Defendants condoned, tolerated, and/or ratified this harassing conduct.

69. This harassing conduct was severe and/or pervasive.

70. This harassing conduct was offensive to Newton.

71. This harassing conduct interfered with Newton's ability to perform his job duties.

72. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Newton.

73. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Newton.

74. Newton suffered emotional distress as a result of Defendants' conduct, and is entitled to emotional distress damages pursuant to R.C. §4112 *et seq*.

75. As a direct and proximate result of Defendants' conduct, Newton has suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq*.
### (Defendant Airgas Only)

76. Newton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

77. Newton is a member of a statutorily protected class based on his disabilities under R.C. § 4112 et seq.

78. During his employment with Airgas, Newton was subjected to offensive and harassing based on his disabilities.

79. Defendant knew or should have known of the harassing conduct against Newton.

80. Defendant condoned, tolerated, and ratified this harassing conduct.

81. This harassing conduct was severe and/or pervasive.

82. This harassing conduct was offensive to Newton.

83. This harassing conduct interfered with Newton's ability to perform his job duties.

84. Defendant's offensive and harassing conduct created a hostile and/or abusive work environment for Newton.

85. This harassing conduct was so severe and pervasive that it materially altered the conditions of Newton's employment.

86. Any reasonable person in Newton's place would also have no choice but to resign due to the conduct.

87. Newton, with no other reasonable choice, was then forced to resign his employment.

88. Newton's resignation was a constructive termination, and therefore an adverse employment action.

89. Airgas constructively terminated Newton's employment.

90. Airgas treated Newton differently than other similarly-situated employees based on his disabilities.

91. Defendant's discrimination against Newton based on his disabilities violates R.C. § 4112 et seq.

92. Defendant treated Newton differently than other similarly situated employees based on his disabilities.

93. Defendant discriminated against Newton on the basis of his disabilities throughout his employment with the company.

94. As a direct and proximate result of Defendant's conduct, Newton suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (Defendant Airgas Only)

95. Newton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

96. Newton is in a protected class for his disability (described *supra*).

97. Defendants had notice of Newton's disabilities. Alternatively, Defendants perceived Newton as disabled.

98. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

99. During his employment with Airgas, Newton was subjected to offensive and harassing conduce based on his disability from his superiors and coworkers.

100. Defendants knew or should have known of the harassing conduct against Newton.

101. Defendants condoned, tolerated, and/or ratified this harassing conduct.

102. This harassing conduct was severe and/or pervasive.

103. This harassing conduct was offensive to Newton.

104. This harassing conduct would also be offensive to any reasonable person.

105. This harassing conduct interfered with Newton's ability to perform his job duties.

106. The harassment was based on Newton's disability.

107. This harassing conduct was so severe and pervasive that it materially altered the conditions of Newton's employment.

108. Newton, with no other reasonable choice, was then forced to resign due to the conduct.

109. Newton's resignation was a constructive termination, an adverse employment action.

110. Defendants violated the ADA by constructively terminating Newton's employment because of his disability.

111. Defendants violated the ADA by treating Newton different from other similarly situated employees outside his protected class.

112. Defendant violated the ADA by applying its employment policies in a disparate manner based on Newton's disability.

113. Defendants violated the ADA by applying its disciplinary policies in a disparate manner based on newton's disability.

114. As a direct and proximate result of Defendant's actions, newton has suffered and will continue to suffer damages.

## COUNT IV: SEXUAL HARASSMENT IN VIOLATION OF R.C. § 4112.01 *et seq.* (Defendant Airgas Only)

115. Newton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. During his employment, Newton was subjected to unwelcome sexual harassment in the form of sexual comments, inappropriate sexual gestures, and unwelcome physical contact.

117. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcome sexual comments, inappropriate sexual gestures, and unwelcome physical contact.

118. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. § 4112 *et seq*.

119. Field, Plant, and Driver Manager Lenny Daniels' sexual harassment of Newton occurred while he was acting within the course and scope of his employment at Airgas.

120. Newton was offended by Daniels' comment when around early January 2020, Daniels said, "I just wanted to see if I could make you come,": alluding to male ejaculation.

121. Newton was offended when, after he tried to leave Daniels' office, Daniels' slapped on his butt. This was an instance of unwelcome physical contact.

122. Newton was offended when Daniels' would show him pictures of his daughter posed in provocative ways.

123. Newton was offended when, after some miscommunication related to a delivery route in Cincinnati, Daniels yelled at Newton saying, "I should bend you over this table and fuck you in the ass, you're so stupid."

124. A supervisor making comments like the ones described *supra* and initiating unwelcome physical contact on a subordinate's body violates the Harassment Policy.

125. Alternatively, a supervisor making comments like the ones described *supra* and initiating unwelcome physical contact to a subordinate's body was permitted by Airgas.

126. As Newton's supervisor, Daniels' actions were inescapable and often triggered by innocuous instances of forgetfulness resulting from Newton's short-term memory loss: a disability that Daniels' had knowledge of.

127. Unable to tolerate the constant harassment, Newton was forced to resign for the good of his health and safety.

128. No reasonable person would have kept working for Airgas under similar conditions.

129. Daniels' comments and unwelcome physical contact constituted sexual harassment.

130. Newton suffered emotional distress damages as a result of Defendants' conduct described herein, and is entitled to emotional distress damages pursuant to R.C. § 4112 *et seq*.

131. As a direct and proximate result of Defendants' acts and omissions, Newton has suffered and will continue to suffer damages.

## COUNT V: RETALIATION

132. Newton restates each and every prior paragraph of this complaint, as if it were fully restated herein.

133. As set forth *supra*, Newton, after his employment with Airgas ended, applied for a job with USExpress.

134. USExpress called Airgas to confirm Newton's dates of employment.

135. Airgas told USExpress that Newton never worked there.

136. Airgas' representation to USExpress that Newton was never an employee was false and Airgas knew it to be false.

137. Airgas's intent in giving a false representation was to interfere with Newton's ability to gain a new job at USExpress.

138. Airgas had no privileged or other legitimate reasons to make this false statement against Newton. This was an adverse employment action against Newton.

139. Pursuant to R.C. §4112 and the ADA, if is an unlawful discriminatory practice to discrimination in any manner against any person because that person has opposed any unlawful discriminatory practice.

140. Newton suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112 *et seq*. and the ADA.

141. As a direct and proximate result of Defendant's retaliatory action against Newton, he suffered and will continue to suffer damages.

## COUNT VI: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (Defendant Airgas Only)

142. Newton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

143. As set forth above, Plaintiff, after his employment with Airgas ended, began working with USExpress.

144. Plaintiff's next job with USExpress would have constituted a beneficial business relationship between the two.

145. Defendant was aware of Plaintiff's next attempted next job with USExpress.

146. Defendant called USExpress with the intent of filing a false, defamatory, and harassing job reference. It then did so.

147. Defendant's intent was to interfere with Plaintiff's job at USExpress.

148. Defendant had no privileged or other legitimate reasons to make this false, defamatory, and harassing reference against Plaintiff.

149. USExpress told Plaintiff that, because of this false, defamatory, and harassing reference from Defendant, that he should expect to lose his job soon after.

150. Plaintiff was then forced to resign from USExpress due to Defendant's false, defamatory, and harassing reference.

151. Plaintiff's resignation was a breach of this beneficial business relationship.

152. Defendant's false, defamatory, and harassing reference caused the breach of this beneficial business relationship.

153. As a direct and proximate result of Defendant's conduct, Newton suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Newton demands from Defendants the following:

a) Issue a permanent injunction:

    i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

  ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

  iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

  iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge his personnel file of all negative documentation;

c) An award against each Defendants for compensatory and monetary damages to compensate Newton for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Plaintiff's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


  /s/ Matthew Bruce
Matthew G. Bruce (0083769)
      Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM,**
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com


*Attorneys for Plaintiff Joey Newton*

## JURY DEMAND

Plaintiff JOEY NEWTON demands a trial by jury by the maximum number of jurors permitted.


  /s/ Matthew Bruce
Matthew G. Bruce (0083769)

17